UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| CARMON LANG, | CASE FILE 13 CV _____ / _____ |
| Plaintiff, | **COMPLAINT** |
| vs. | **JURY DEMANDED** |
| CITY OF MINNEAPOLIS, MINNESOTA, a government entity and political subdivision of the state of Minnesota, and MINNEAPOLIS POLICE OFFICERS "1 - 10", Badge numbers \_\_\_\_\_ In their respective individual capacities acting Under color of law as Minneapolis Police Officers, | |
| Defendants. | |

## INTRODUCTION

Carmon Lang, an African-American adult domiciliary of Minneapolis, Hennepin County, Minnesota, sues the City of Minneapolis and yet-to-be-identified individual Minneapolis police officers, for their joint and several actions under color of law, for unreasonable seizure and infliction of excessive, unreasonable force against her person on 6 – 7 November 2013 in Minneapolis in a manner showing gender and racial bias against her. The officers seized her and humiliated her by coercing her to remove partially her own brassiere to show she was not in possession of unlawful controlled substances, for which the officers had neither a search warrant nor articulable reasonable suspicion when they seized Ms. Lang as a passenger in an automobile.

SCANNED
NOV - 5 2013
U.S. DISTRICT COURT MPLS

The officers' violated her clearly established, federally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, for which 42 U.S.C. § 1983 provides remedy, to be free from unreasonable seizure, infliction of excessive, unreasonable force, and denial of equal protection of the law on account of gender or race.

The officers committed common law false arrest, false imprisonment, and common law battery upon Ms. Lang. The officers, acting in the course and scope of their employment as police officers, expose the City of Minneapolis to liability by *respondeat superior* for these common law torts.

The officers violated Ms. Lang's right to be free from gender and race discrimination as a recipient of public service, specifically, interaction with law enforcement officers. The officers, acting in the course and scope of their employment as police officers, expose the City of Minneapolis to liability by *respondeat superior* for violation of the Minnesota Human Rights Act prohibition against gender and race discrimination in public services under Minn. Stat. § 363A.12.

In the midst of her seizure, Ms. Lang demanded the seizing officers' names and badge numbers. The officers refused her requests, and threatened her with arrest, imprisonment, and prosecution for demanding this information. Although the officers confined Ms. Lang against her will for one hour, the incident at the heart of this lawsuit resulted in no summons, citation, criminal complaint, or criminal prosecution of any kind against Ms. Lang. In so confining and humiliating Ms. Lang, the individual officers

violated Ms. Lang's clearly established right of freedom of speech in her peaceful challenge to police authority.

Ms. Lang, through her attorneys, has made multiple requests for access upon the City of Minneapolis to public records, including police reports concerning her that would identify the individual officers by name and badge numbers, relating to the incident in North Minneapolis on 6 – 7 November 2012. Ms. Lang made her first request in February 2013. To date, the City of Minneapolis has refused to produce the requested records.

The City claims through counsel that the City is denying access on the grounds of an active criminal investigation. No prosecution against Ms. Lang, however, has ever taken place for the incident on 6 – 7 November 2012. The City does not explain the manner by which Ms. Lang's request for access to data relating to her – and her alone -- jeopardizes an active investigation of another individual.

The City's refusals have frustrated Ms. Lang's effort to evaluate the facts and possible claims from the 6 – 7 November 2012 incident. The City's refusals have thwarted efforts to hold officers accountable for unconstitutional, violent, and humiliating misconduct at the expense of Ms. Lang. The City's refusal has made it necessary to bring suit against the City for violation of Ms. Lang's right of access to public and private data concerning herself under Minn. Stat. §§ 13.04 subd. 3 and 13.08 subd. 1, 2, and 4 of the Minnesota Government Data Practices Act.

Ms. Lang demands damages in excess of seventy-five thousand dollars (>$75,000) against the City of Minneapolis, or such sum as the jury may allow, and all other

declaratory, equitable, and legal relief that the Minnesota Human Rights Act and Minnesota Government Data Practices Act allow. She demands in excess of seventy-five thousand dollars (>$75,000) against the individual defendant officers, jointly or severally, or such sum as the jury may allow, for general, compensatory damages. She demands in excess of seventy-five thousand dollars (>$75,000), or such sum as the jury may award, in punitive damages against the individual defendants, jointly and severally, for violation of her clearly established, constitutional rights to be free unreasonable seizure and infliction of excessive, unreasonable force. Ms. Lang demands trial by jury on all claims triable to the jury.

**SUBJECT MATTER JURISDICTION**

1. Ms. Lang states claims that implicate rights under U.S. Const. amend. I, IV, and XIV.

2. 42 U.S.C. § 1983 provides a remedy for violation of clearly established, federally protected rights.

3. 28 U.S.C. §§ 1331 and 1343(a)(4) vest jurisdiction in the United States District Court.

4. Ms. Lang states claims under the laws of the state of Minnesota.

5. 28 U.S.C. § 1367 vests supplemental jurisdiction over her Minnesota law claims in the United States District Court.

**VENUE**

6. The substantial number of events at the heart of this lawsuit occurred in Hennepin County, Minnesota.

7. One or more Defendants, including the City of Minneapolis, are found in Hennepin County, Minnesota.

8. 28 U.S.C. § 1291 lays venue in the United States District Court for the Judicial District of Minnesota.

9. LR D. Minn. 83.11 lays venue in the Fourth Division, United States District Court for the Judicial District of Minnesota.

**PARTIES**

10. Ms. Carmon Lang is an adult individual.

11. Ms. Lang domiciles in Minneapolis, Hennepin County, Minnesota.

12. Ms. Lang is an African-American woman.

13. The City of Minneapolis is a government entity and political subdivision of the state of Minnesota under Minn. Stat. § 13.02 subd. 7a of the Minnesota Government Data Practices Act.

14. The City of Minneapolis is a public service of the state of Minnesota under Minn. Stat. § 363A.03 subd. 35 of the Minnesota Human Rights Act.

15. Defendant Officers 1 – 10 are adult individuals whose names and badge numbers have yet to be determined.

16. At all times relevant to this lawsuit, Defendant Officers 1 – 10 acted under color of law as licensed police officers in the employ of the City of Minneapolis.

17. At all times relevant to this lawsuit, Defendant Officers 1 – 10 acted in the course and scope of their respective employments as licensed police officers in the employ of the City of Minneapolis.

18. Plaintiff Carmon Lang sues Defendants 1 – 10, jointly and severally, in their respective individual capacities.

## THE FACTS

19. On the evening of Tuesday 6 November 2012, Plaintiff Carmon Lang celebrated the reelection of President Barack Obama with relatives at the home of Deon Wesley, on the 2600 block of N. Logan Avenue in Minneapolis.

20. Ms. Lang celebrated with Mr. Raymond Griffin, nephew of Mr. Wesley.

21. Plaintiff left his uncle's home with Mr. Griffin at approximately 0045 (12:45 a.m.), 7 November 2012.

22. Plaintiff was a passenger in the vehicle that Mr. Griffin drove, a 1996 Chevrolet Tahoe, whose owner was one Marty Brown.

23. Mr. Griffin took a right on Broadway, crossed Penn Avenue North, and one Minneapolis Police Department squad car pulled him over.

24. Three additional marked squad cars and one unmarked gray truck arrived at the scene of the seizure of Mr. Griffin, Ms. Lang, and the 1996 Tahoe.

25. At the vicinity of the seizure of Plaintiff and Mr. Griffin, the following video recorders potentially recorded images of the seizure of Plaintiff: one police camera at Logan and Broadway, one or more video recorders at the CVS Pharmacy nearby, and dash cameras from each Minneapolis police squad car that arrived.

26. One police officer in uniform approached Plaintiff's vehicle.

27. The officer remarked to Plaintiff, in relation to her answer to his question as to where she had been, "Four more years of celebrating more bullshit."

28. One police officer physically grabbed the Plaintiff.

29. The officer had his firearm drawn on Plaintiff.

6

30. With no warrant for a search or the Plaintiff's arrest, no communicated reason for searching the Plaintiff, and his firearm drawn, the officer coerced Plaintiff into grabbing her brassiere from her outside garment, and shake the brassiere to show she had no illegal drugs hidden in her brassiere.

31. Plaintiff had no contraband, no illegal drugs, or unlawful controlled substances upon her.

32. The coerced search revealed no contraband, illegal drugs, or unlawful controlled substances.

33. Plaintiff demanded the officer's name and badge number.

34. The arrest threatened to arrest Plaintiff for demanding his name and badge number.

35. The officer then grabbed her right arm and handcuffed her.

36. As the officer grabbed and handcuffed her, Plaintiff heard a "popping sound" coming from her right shoulder.

37. Plaintiff immediately felt great pain in her right shoulder, and immediately told the officer that she thought the officer had dislocated her shoulder.

38. Plaintiff had left her purse in the Tahoe.

39. One squad car transported Plaintiff to the Minneapolis Police Department Fourth Precinct Headquarters.

40. The police transported Plaintiff separately from Mr. Griffin.

41. The Defendant individual officers seized Plaintiff for approximately one hour at Fourth Precinct Headquarters, where she was handcuffed her to a chair and was photographed by the officer who handcuffed her.

7

42. The officers did not charge Plaintiff with any offense.

43. To this day, Plaintiff has received no summons, citation, criminal complaint, information, or other document initiating a criminal prosecution for the events relating to her warrantless arrest as a passenger in the 1996 Tahoe on 7 November 2012.

44. The police released Mr. Griffin after a "seventy-two hour hold".

45. In the search incident to the arrest, police found currency determined to be counterfeit currency on Mr. Griffin's person.

46. Ms. Lang had no counterfeit currency on her person, nor did she handle counterfeit currency, at any time relevant to this lawsuit.

47. Neither the state, nor Hennepin County, nor the City of Minneapolis has charged Mr. Griffin with any offense arising from the 7 November 2012 warrantless arrest.

48. Plaintiff's sister Leslie Lang came to Fourth Precinct Headquarters to get Plaintiff.

49. Plaintiff's sister took Plaintiff to North Memorial Hospital in Minneapolis right after she took her out of police custody.

50. Plaintiff had an X-ray of her right shoulder.

51. The shoulder remained painful and restricted Plaintiff's ability to move her shoulder and right arm.

52. Plaintiff underwent an MRI ten days later.

53. The MRI revealed a right shoulder rotator cuff tear.

54. Plaintiff underwent surgery to repair the right shoulder rotator cuff tear after the MRI, on 9 January 2013.

55. Plaintiff underwent a course of physical therapy and rehabilitation from the date of surgery through August 2013.

56. Plaintiff has recovered some of her right shoulder strength and range of motion that she enjoyed before 7 November 2012.

57. Plaintiff's right should causes pain to her when she cleans her house, washes hair, and serves food and drinks.

58. These tasks did not cause pain to Plaintiff before 7 November 2012.

59. The greatest loss to Plaintiff is the inability to do other people's hair for income as a self-employed hairdresser, as the direct result of the warrantless, unlawful seizure and injury to her right shoulder by the Defendants.

61. On or about 4 December 2012, Plaintiff received by email a copy of the Incident Detail Report for incident 12-347920 from the City of Minneapolis, after her request for access to records relating to the incident.

62. Plaintiff served a notice of claim on the City of Minneapolis on or about 8 February 2013, through her attorney.

62. On or about 8 February 2013, with assistance from counsel, Plaintiff served her second request for access to public and private data relating to herself and the circumstances of the 7 November 2012 incident, in accordance with Minn. Stat. §§ 13.04 subd. 3 and 13.03 subd. 3 of the Minnesota Government Data Practices Act.

63. The City of Minneapolis responded on or about 12 February 2013 with a four-page police report for CCN MP-12-347920 that identified reporting officer Brandy Steberg,

9

Badge 6767, assisting officer Christopher Tucker, Badge 7856, Squad 494, and supervising officer Sergeant David Michael Robinson, Badge 6060.

64. On or about 18 February 2013, Plaintiff served a Notice of Claim on the City of Minneapolis for her injuries on 7 November 2012.

65. On or about 10 June 2013, Plaintiff received acknowledgement of the Notice of Claim.

66. On or about 20 June 2013, Plaintiff through counsel requests access to data, including video and audio recordings of the incident taken by units at the scene, viz., 494 (Officers Brandy Steberg and Christopher Tucker), 955 (Officer Andrew Bittell), 924 (Officers Oscar Macias and Ricardo Muro), 495 (Officer Karl Sauskojus), 424 (Officers Steve Herron and Daniel McDonald), 430 (Officers Gretchen Bloss and Richard Walker), 927 (Officers Jeff Kading and Brandon Kitzerow), and 431 (Officers Lauren Peterson and Bridget Reilly).

67. On or about 20 June 2013, in the same letter through counsel, Plaintiff demanded the identity of the officer who seized her, his partner, and all Minneapolis Police Department protocols relating to individual searches, the use of firearms, and the use of handcuffs upon an individual at the time of a seizure of the individual.

68. On or about 2 July 2013, the City provided a two page public document for MP-347920.

69. The City failed to identify the officer who seized Plaintiff.

70. The City failed to identify the officer who placed handcuffs on the Plaintiff.

71. The City failed to identify the officer who transported Plaintiff to the Fourth Precinct Headquarters.

72. Minneapolis Police Department Regulation 5-306, "Use of Force", requires a CAPRS report for incidents involving injuries involving handcuffs.

73. On or about 26 August 2013, through counsel, Plaintiff once again requested access to the CAPRS report identifying the officer who handcuffed her.

74. To this date, eleven months since Plaintiff's first request for access to data, and more than eight months since her first request for access to data with the assistance of her attorney, Defendant City of Minneapolis has failed to provide (a) video recording of Plaintiff; (b) audio recordings of Plaintiff; (c) photographs of Plaintiff; (d) police records identifying the individual officer who handcuffed and injured Plaintiff; and (e) with the exception of the incident report and the public portion of CCN MP 12-347920, all private and public data relating to the Plaintiff in the incident of 7 November 2012 at the heart of this lawsuit.

75. The actions of Defendant City of Minneapolis have inflicted compensatory damages upon Plaintiff in excess of seventy-five thousand dollars (>$75,000).

76. The actions of the individual Defendants, jointly and severally, have inflicted compensatory damages upon Plaintiff in excess of seventy-five thousand dollars (>$75,000).

## CLAIM I: UNREASONABLE SEIZURE (U.S. CONST. AMEND. IV AND XIV, THROUGH 42 U.S.C. § 1983)

77. Plaintiff realleges and reasserts each and every claim and averment above.

78. On 7 November 2012, at or near 0045 (12:45 a.m.), in Minneapolis, Minnesota, Defendants 1 - 10, jointly and severally, in their individual capacities, under color of law as law enforcement officers, violated Plaintiff's clearly established right to be free from unreasonable seizure of her person, without warrant, without consent, and without any other lawfully recognized exception to the constitution requirement for a warrant, under the Fourth and Fourteenth Amendments to the United States Constitution, protected through 42 U.S.C. § 1983 in their warrantless arrest of Plaintiff while a passenger in the vehicle driven by Mr. Griffin, and without any articulable suspicion of unlawful conduct on Plaintiff's part, prior to, or during the seizure of the vehicle,, the Plaintiff, and Mr. Griffin.

79. Defendants 1 - 10, jointly and severally, seized Plaintiff's person with intentional, reckless, or conscious disregard of her rights to be free from unreasonable, warrantless search of her person.

80. Individual Defendants 1 – 10, jointly and severally, inflicted damages upon Plaintiff in excess of seventy-five thousand dollars (>$75,000), or such sum as the jury may award.

## CLAIM II: UNREASONABLE SEARCH (U.S. CONST. AMEND. IV AND XIV, THROUGH 42 U.S.C. § 1983)

81. Plaintiff realleges and reasserts each and every claim and averment above.

I

82. On 7 November 2012, at or near 0045 (12:45 a.m.), in Minneapolis, Minnesota, Defendants 1 - 10, jointly and severally, in their individual capacities, under color of law as law enforcement officers, violated Plaintiff's clearly established right to be free from unreasonable search of her person, without warrant, without consent, and without any other lawfully recognized exception to the constitution requirement for a warrant, under the Fourth and Fourteenth Amendments to the United States Constitution, protected through 42 U.S.C. § 1983 in their warrantless search of Plaintiff's person, particularly in coercing her to pull her brassiere while grasping her over-garments and shake her brassiere to show she was not carrying unlawful controlled substances or contraband, while a passenger in the vehicle driven by Mr. Griffin, and without any articulable suspicion of unlawful conduct on Plaintiff's part, prior to, or during the seizure of the vehicle,, the Plaintiff, and Mr. Griffin.

83. Defendants' joint and several search of Plaintiff's person was not reasonable under clearly established existing law on account of the lack of a search warrant, the lack of consent, the lack of exigent circumstances, the lack of probable cause to search Plaintiff's person incident to the stop of the motor vehicle driven by Mr. Griffin, and the lack of any other exception under the law to search Plaintiff's person.

84. Defendants 1 - 10, jointly and severally, searched Plaintiff's person with intentional, reckless, or conscious disregard of her rights to be free from unreasonable, warrantless search of her person.

85. Individual Defendants 1 – 10, jointly and severally, inflicted damages upon Plaintiff in excess of seventy-five thousand dollars (>$75,000), or such sum as the jury may award.

### CLAIM III: INFLICTION OF EXCESSIVE, UNREASONABLE FORCE (U.S. CONST. AMEND. IV AND XIV, THROUGH 42 U.S.C. § 1983)

86. Plaintiff realleges and reasserts each and every claim and averment above.

87. Defendants 1 – 10, jointly and severally, in their respective individual capacities under color of law as Minneapolis police officers, injured Plaintiff's right shoulder rotator cuff in the course of seizing her and then handcuffing her.

88. Defendants' use of force that cause the injury to Plaintiff's right shoulder rotator cuff comprised unreasonable, excessive infliction of force under clearly established existing law because Plaintiff did not resist the Defendants, and because the Defendants' initial application of force to the Plaintiff's person lacked lawful authority under clearly established existing law.

89. Defendants 1 - 10, jointly and severally, inflicted excessive, unreasonable force upon Plaintiff's person with intentional, reckless, or conscious disregard of her clearly established rights to be free from infliction of excessive, unreasonable, force upon her person.

90. Individual Defendants 1 – 10, jointly and severally, inflicted damages upon Plaintiff in excess of seventy-five thousand dollars (>$75,000), or such sum as the jury may award.