**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Carmon Lang,                                          Civil No. 13- 3008 (DWF/TNL)

                         Plaintiff,

v.                                                        **MEMORANDUM**
                                                          **OPINION AND ORDER**

City of Minneapolis, Minnesota, a government
entity and political subdivision of the state of
Minnesota; Brandy Steberg, In own individual
capacity acting under color of law as a
Minneapolis Police Officer; and Karl
Sauskojus, In own individual capacity
acting Under color of law as a Minneapolis
Police Officer,

                         Defendants.

---

Mark D. Luther, Esq., and Peter J. Nickitas, Esq., counsel for Plaintiff.

Sarah C. S. McLaren, Assistant City Attorney, Office of the Minneapolis City Attorney,
counsel for Defendants.

---

**INTRODUCTION**

      This matter is before the Court on Plaintiff Carmon Lang's ("Plaintiff" or "Lang")

Motion for Partial Summary Judgment as to Liability on Claim XIII of Her Verified

Complaint, Viz., Denial of Right of Access to Data in Violation of the Minnesota

Government Data Practices Act (Doc. No. 7); and Plaintiff's Motion to Supplement

Records and Amend Prayer for Relief Under Claim XIII (Doc. No. 23).  For the reasons

set forth below, the Court denies the first motion, and grants in part and denies in part the second motion.

## BACKGROUND

### I.     Factual Background

In her First Amended Complaint ("FAC"), Plaintiff alleges that on November 6, 2012, she was a passenger in a 1996 Chevrolet Tahoe driven by Raymond Griffin ("Griffin") that was stopped by the Minneapolis Police.  (Doc. No. 32, FAC ¶ 22.) She alleges that four squad cars and an unmarked gray truck pulled them over.  (*Id.* ¶¶ 23-24.)

Plaintiff alleges that Brandy Steberg ("Steberg"), a Minneapolis police officer, approached the vehicle, made a negative comment, and "physically grabbed" Plaintiff with a firearm drawn.  (*Id.* at ¶¶ 27-28.)  Plaintiff alleges that Steberg next "coerced Plaintiff into grabbing her brassiere from her outside garment, and shake [sic] the brassiere to show she had no illegal drugs hidden in her brassiere."  (*Id.* ¶ 30.)  Plaintiff asserts Steberg had no warrant and no probable cause.  (*Id.*)  Plaintiff alleges she asked for Steberg's name and badge number, and he threatened her as a result.  (*Id.* ¶¶ 33-34.) Karl Sauskojus ("Sauskojus"), a Minneapolis police officer, then assisted Steberg. (*Id.* ¶ 34A.)  According to Plaintiff, Steberg then grabbed and handcuffed her, and she heard a "popping sound" from her right shoulder, and she felt "great pain" in that shoulder.  (*Id.* ¶¶ 35-37.)  One squad car then transported Plaintiff to the Minneapolis Police Department's Fourth Precinct headquarters (the "Precinct") where she was held for approximately one hour, while handcuffed to a chair.  (*Id.* ¶¶ 39-42.)  Plaintiff was

never charged with a crime.  (*Id.*)  After the arrest, Plaintiff went to North Memorial

Hospital in Minneapolis ("North Memorial") where she had an X-ray of her shoulder

taken.  (*Id.* ¶¶ 49-50.)  Plaintiff also had an MRI taken later.  (*Id.* ¶¶ 52-53.)

At the time of the stop, Griffin was arrested for violating a domestic no-contact

order, driving while intoxicated (DWI), and possession of counterfeit bills.  (Doc. No. 10

("Nickitas Decl.") ¶ 4, Ex. 2.)  Hennepin County prosecuted Griffin for violating the

no-contact order which related to Plaintiff.  (Doc. No. 14 ("McLaren Decl.") ¶ 3, Ex. 1.)

Plaintiff's FAC asserts the following claims:  (I) Unreasonable Seizure;

(II) Unreasonable Search; (III) Infliction of Excessive, Unreasonable Force;

(IV) Retaliatory Seizure; (V) Denial of Equal Protection of the Law (Sex

Discrimination); (VI) Denial of Equal Protection of the Law (Racial Discrimination);

(VII) Infliction of Unreasonable Seizure, Infliction of Excessive Force, Retaliatory

Infliction of Excessive Force, Sex Discrimination, and Racial Discrimination as *Monell*

claims; (VIII) Discrimination in the Administration of Public Service Because of Sex,

pursuant to Minn. Stat. § 363A.12; (IX) Discrimination in the Administration of Public

Service Because of Race, pursuant to Minn. Stat. § 363A.12; (X) Common Law False

Arrest; (XI) Common Law Battery; (XII) Common Law False Imprisonment; and

(XIII) Violation of Right of Access to Public and Private Data of and Concerning

Herself, pursuant to Minn. Stat. §§ 13.04, 13.03, and 13.08.

## II.    Procedural and Other Background

The parties' correspondence is summarized as follows.  On February 8, 2013,

Plaintiff submitted her first request for police reports to the City of Minneapolis (the

"City"). (Nickitas Decl. ¶ 4, Ex. 1.) On February 12, 2013, the City responded. (*Id.* ¶ 4, Ex. 2.) On February 18, 2013, Plaintiff sent a Notice of Claim to the City. (*Id.* ¶ 4, Ex. 3.) On June 10, 2013, the City responded. (*Id.* ¶ 4, Ex. 4.) On June 20, 2013, Plaintiff's counsel sent another request letter to the City with detailed requests relating to the incident. (*Id.* ¶ 4, Ex. 5.) On July 2, 2013, the City responded and declined to disclose the information Plaintiff requested. (*Id.* ¶ 4, Ex. 6.) On August 26, 2013, Plaintiff's counsel sent an additional letter to the City asserting Plaintiff's right to the data requested in June. (*Id.* ¶ 4, Ex. 7.) On September 5, 2013, the City responded and again declined to disclose the information requested by Plaintiff and her counsel. (McLaren Decl. ¶ 7, Ex. 3.) Finally, on November 11, 2013, after filing her Complaint, Plaintiff's counsel sent an additional letter to the City. (Nickitas Decl. ¶ 4, Ex. 9.) On November 12, 2013, the City responded. (*Id.* ¶ 4, Ex. 10.)

On November 4, 2013, Plaintiff filed her Complaint against the City and "Minneapolis Police Officers '1-10', Badge numbers ___, In their respective individual capacities acting Under color of law as Minneapolis Police Officers" ("Minneapolis Police Officers 1-10"). (*See generally* Doc. No. 1, Compl.) The Minneapolis Police Officers 1-10 were dismissed by stipulation and by the filing of the FAC. (Doc. Nos. 30-32.) Plaintiff's FAC added Minneapolis police officers Steberg and Sauskojus, in their respective individual capacities acting under color of law as Minneapolis Police Officers, as Defendants (the City, Steberg, and Sauskojus are collectively referred to as "Defendants").

On December 24, 2013, Plaintiff moved for Partial Summary Judgment as to Liability on Claim XIII of Her Verified Complaint, Viz., Denial of Right of Access to Data in Violation of the Minnesota Government Data Practices Act ("First Motion") (Doc. No. 7).  For that motion, Plaintiff largely sought the documents related to her arrest and which she had previously sought through her correspondence with Defendants.  (*See generally* Doc. No. 9.)  However, the day before oral argument[1] on the First Motion, the City disclosed paper reports and three CDs with video and audio recordings, as requested by Plaintiff.  At the hearing, the City also informed Plaintiff that photographs of Plaintiff from her detention at the Precinct no longer exist.

The City claims that, at the time of Plaintiff's arrest, Plaintiff told Steberg she had suffered injuries, and Steberg notified a supervisor pursuant to Minneapolis Police Department policies and procedures.  (Doc. No. 27 ("Steberg Decl.") ¶ 3.)  Steberg also photographed Plaintiff's alleged injuries which were not visible at that time.  (*Id.*) According to Steberg, Steberg then removed the memory card from the camera, placed it in a manila envelope, and placed the envelope on a table in the Precinct based on the understanding that the envelope would be inventoried by another Minneapolis Police Department officer and would be preserved in the Minneapolis Police Department's Property and Evidence Unit.  (*Id.* ¶¶ 3-4.)  Defendants then assert that the inventory occurred within hours, but that the memory card was not properly inventoried for "inadvertent reasons."  (*Id.* ¶ 5, Ex. 1.)

---

[1]     The Court heard oral argument on Plaintiff's First Motion on February 14, 2014.

On February 19, 2014, Plaintiff further moved the Court to Supplement Records and Amend Prayer for Relief Under Claim XIII ("Second Motion") (Doc. No. 23).

It appears to the Court that Plaintiff now seeks the following:  summary judgment on Count XIII pursuant to both her First Motion and Second Motion; a rebuttable presumption that if the photographs were available, they would depict Plaintiff's injuries; leave to modify her prayer for relief to include a rebuttable presumption; and leave to supplement the record to include those documents produced by the City.

## DISCUSSION

### I.  Motion for Partial Summary Judgment (Count XIII)

#### A.  Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the

record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### B.     The Minnesota Government Data Practices Act ("MGDPA")

Plaintiff seeks partial summary judgment as to liability on Claim XIII (Violation of Right of Access to Public and Private Data of and Concerning Herself) for the City's alleged violations of the MGDPA. Plaintiff's argument appears to initially be based on the City's failure to provide her with the data and information she requested (*see generally* Doc. No 9), and now on the City's failure to segregate certain documents, as well as Defendants' loss of certain photographs relating to Plaintiff (Doc. No. 24 at 5-7).

The MGDPA "regulates the collection, creation, storage, maintenance, dissemination, and access to government data in government entities." Minn. Stat. § 13.01, subd. 3 (2013). Data relating to individuals is divided into three categories: (1) public data; (2) private data; and (3) confidential data. *See Wiegel v. City of St. Paul*, 639 N.W.2d 378, 382 (Minn. 2002) (citing Minn. Stat. § 13.02, subds. 3-5, 12, 15). Data "not on individuals" is also divided into three categories: (1) public data; (2) nonpublic data; and (3) protected nonpublic data. *Id.*, subds. 9, 13, 14. Generally, "private data on individuals" and "nonpublic data not on individuals" are not accessible to the public, but are accessible to the subject of the data. *Id.*, subds. 9, 12. However, data collected for the purpose of a criminal investigation is not accessible to the subject of that data while

7

the investigation is active because it is classified "confidential" or "protected nonpublic." Minn. Stat. § 13.82, subd. 7.

Persons denied access to data to which they believe they are entitled may: bring suit for damages;[2] seek an injunction with respect to practices that violate the act; or bring an action to compel compliance against the government entity in control of the data. *Wiegel*, 639 N.W.2d at 382-83 (citing Minn. Stat. § 13.08, subds. 1-4). "The government may violate the Act when it improperly denies persons access to certain classifications of data." *Id.* at 383. An "aggrieved person" may recover "costs and disbursements, including reasonable attorney's fees." *Id.* Those classifications of data must be available as a matter of right for the person to be an "aggrieved person." *Id.* at 384.

In her First Motion, Plaintiff argues that she is an "aggrieved person" because she should be able to access the data at issue as a matter of right, and that the City had no justification for its untimely disclosure and its withholding of data. Specifically, she argues that she repeatedly sought information related to her "warrantless seizure and arrest" and the identity of the officers who handcuffed and injured her, but the City was untimely in its disclosures and production of the requested data.

Plaintiff further argues that the pleadings "leave no doubt that the City of Minneapolis wrongfully denied her request for access to data" relating to her arrest and thereby forcing her to file this lawsuit. (*See* Doc. No. 9, at 1-2.) In her Second Motion,

---

[2]     A party may also pursue an administrative process when he or she contests the government's determinations or actions with respect to data disclosure. *Wiegel*, 639 N.W.2d at 382. It is not clear to the Court if Plaintiff also pursued this remedy.

Plaintiff additionally argues that the City failed to "segregate" and produce certain

requested documents which were public data as required under Minn. Stat. § 13.82,

subd. 16.  As a result, Plaintiff seeks summary judgment on her claims for Violation of

Right of Access to Public and Private Data of and Concerning Herself, under various

subdivisions of Minn. Stat. §§ 13.04, 13.03, and  13.08.  (*See id*. at 3.)

    The City argues that Plaintiff was not entitled to the data she requested because it

related to an active criminal investigation and was therefore protected under the

MGDPA, and that any violation of the MGDPA, if it existed, was not willful and was

wholly reasonable.  (*See generally* Doc. No. 13.)  Specifically, Defendant argues that

they did not produce the information requested by Plaintiff because her information was

tied to information regarding Griffin who was the subject of a criminal investigation,

thereby making his information "confidential" or "protected nonpublic," which cannot be

disclosed.  With respect to Plaintiff's segregation arguments, the City asserts that it had

no duty to segregate the data because the data related to an investigation of Griffin.

    First, to the extent Plaintiff seeks to compel the City to produce certain documents

or information, the Court concludes that Plaintiff's motion is moot.  Defendant provided

all information requested by Plaintiff on February 13, 2013.  Additionally, the City

explained that it cannot produce the photos sought by Plaintiff because they were deleted,

and no longer exist.  Thus, there are no documents of which the Court can compel

production.

    Second, however, to the extent Plaintiff seeks damages and partial summary

judgment finding the City liable for violations of the MGDPA, the Court concludes that

genuine issues of material fact remain at this time.  Defendant has presented evidence

that the City had a good faith basis for withholding the documents and other information

at issue—that the records were a part of an active criminal investigation.  (McLaren Decl.

¶¶ 3-7 & Exs. 1-3.)  Further, discovery in this case has not been completed.  The

supplemental documents[3] filed by Plaintiff detailing Plaintiff's seizure and arrest and

related issues do not change this result because they fail to address the pending fact

questions—whether Plaintiff had a right to access those documents and Defendants'

actions and intentions in declining to disclose them.  The contents of these documents do

not obviate the need for additional discovery given Defendants' presentation of evidence

regarding whether they had a legitimate basis for proceeding in the manner they did with

respect to Plaintiff's information requests.  The same is true of Plaintiff's argument

regarding document segregation.  Defendants have presented a genuine issue of material

fact as to whether they properly declined to disclose the information.  Thus, Defendants

have presented sufficient evidence "demonstrat[ing] the existence of specific facts in the

record that create a genuine issue for trial."  *Krenik*, 47 F.3d at 957.  Whether or not the

City's arguments have merit based on the facts of this case is a question of fact to be

determined by a jury at trial, and the Court therefore declines to grant summary judgment

at this stage.

---

[3]     Plaintiff requested leave to supplement the record to add the twenty pages of paper reports that Defendants' ultimately produced to Plaintiff.  (Doc. Nos. 23 & 24.)  The Court allowed Plaintiff to provide those documents on June 12, 2014 (Doc. No. 35) and Plaintiff did so on June 13, 2014 (Doc. No. 36).  The Court has reviewed the supplemental records.

Accordingly, the Court denies the motion for summary without prejudice as it relates to Count XIII of the Amended Complaint (Violation of Right of Access to Public and Private Data of and Concerning Herself).  The Court further reserves the right to award "costs and disbursements, including reasonable attorney's fees" against the City should Plaintiff prevail on this claim.

## II.    Motion to Amend Prayer for Relief

In her Second Motion, it appears that Plaintiff seeks three things with respect to the lost or destroyed photographs taken of her injuries at the Precinct:  (1) partial summary judgment as to liability for Count XIII of her Amended Complaint for violations of the MGDPA; (2) the imposition of a rebuttable evidentiary presumption in favor of Plaintiff that the lost or destroyed photographs would show she has suffered injuries; and (3) leave to amend her prayer for relief to include a request for an adverse inference instruction at trial.[4]

The Court has fully addressed summary judgment for Count XIII above, and the Court concludes that the same reasoning applies here.  Defendants have presented sufficient evidence to create a fact question regarding what happened to the photographs and why.  Steberg testifies that Minneapolis Police Department procedure was followed, but that the photographs were inadvertently lost anyway.  Therefore, again, genuine issues of material fact have been presented by Defendants, and summary judgment is not

---

[4]    Plaintiff also requested leave to supplement the record which the Court granted and further explains in footnote 3, above.

appropriate at this time.  The Court addresses the issue of giving an adverse inference instruction at trial below.

Plaintiff claims that because the Court has the power to remedy the City's failure to store and maintain the availability of lawfully accessible data, it should do so here. Plaintiff argues that the City's disclosure that the Plaintiff's photographs have disappeared compels equitable relief by this Court.

Defendants do not oppose Plaintiff's request to amend her FAC to include an adverse inference instruction at trial, but do oppose an immediate determination by this Court of a rebuttable evidentiary presumption.  Defendants argue that Plaintiff has not met the spoliation or adverse inference requirement that Plaintiff show bad faith conduct by Defendants and additionally argue that a request for an adverse inference is premature.

In the Eighth Circuit, to receive an adverse inference instruction, "a district court is required to make two findings before such an instruction is warranted:  (1) there must be a finding of intentional destruction indicating a desire to suppress the truth; and (2) there must be a finding of prejudice to the opposing party."  *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013) (internal quotations omitted) (citing *Stevenson v. Union Pacific R.R. Co.*, 354 F.3d 739, 746, 748 (8th Cir. 2004)).

At this phase in the proceedings, the Court agrees with Defendants that an adverse inference instruction determination is premature.[5]  While Plaintiff has arguably shown some prejudice to the development of her case by the inability to review the photographs, Plaintiff has not presented evidence that there was "intentional destruction indicating a

---

[5]        The same is true for any determination related to spoliation.

desire to suppress the truth." *Stevenson*, 354 F.3d at 746, 748.  Additionally, as

Defendants note, photographs from North Memorial or elsewhere, not yet produced in

discovery, could remediate any prejudice that exists because they could provide the exact

same evidence Plaintiff seeks from Defendants in order to prove her case.

   Thus, the Court concludes that Plaintiff's request is premature.  However, to the

extent that Plaintiff only seeks leave to amend her FAC to include a request for an

adverse inference instruction at trial, the Court grants her request.  Moreover, the Court

retains the right to give an adverse inference instruction at trial and to impose sanctions

for spoliation if proven.

## CONCLUSION

   Defendants have presented sufficient evidence to show a genuine issue of material

fact regarding whether they were obligated to produce the data requested by Plaintiff.

Additionally, Plaintiff's request for an adverse inference instruction relating to the lost

photographs is premature, but Plaintiff may amend her prayer for relief to include a

request for such an adverse inference instruction.

## ORDER

   In light of the foregoing, and all the files, records and proceedings herein, it is

**HEREBY ORDERED** that:

   1.      Plaintiff's Motion for Partial Summary Judgment as to Liability on Claim

XIII of Her Verified Complaint, Viz., Denial of Right of Access to Data in Violation of

the Minnesota Government Data Practices Act (Doc. No. [7]) is **DENIED**; and

2.      Plaintiff's Motion to Supplement Records and Amend Prayer for Relief Under Claim XIII (Doc. No. [23]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

a.      Plaintiff's request to amend her prayer for relief to include a request for an adverse inference instruction regarding the photographs is **GRANTED**, and

b.      Plaintiff's request to supplement the record is **DENIED AS MOOT**.

Dated:  June 20, 2014                              s/Donovan W. Frank
                                                   DONOVAN W. FRANK
                                                   United States District Judge